UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

ALAN E. ROTH                                                        CIVIL ACTION

VERSUS                                                              NO. 19-876-SDD-SDJ

INSPECTORATE AMERICA
CORPORATION

## NOTICE

Please take note that the attached Magistrate Judge's Report and Recommendation has been filed with the Clerk of the United States District Court for the Middle District of Louisiana.

Under 28 U.S.C. § 636(b)(1), you have **14 days** from receipt of this Notice to file written objections to the proposed findings of fact and conclusions of law in the Magistrate Judge's Report. A failure to object will constitute a waiver of your right to attack the factual findings on appeal.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on September 15, 2020.

_____
SCOTT D. JOHNSON
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **ALAN E. ROTH** | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-876-SDD-SDJ** |
| **INSPECTORATE AMERICA CORPORATION** | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Before the Court is a Motion to Remand (R. Doc. 5) filed by Plaintiff, Alan E. Roth. Defendant, Inspectorate America Corporation, filed an Opposition (R. Doc. 6) to the Motion and later a Supplemental Opposition (R. Doc. 16). Having reviewed the parties' filings and the applicable law, the Court **recommends** that Plaintiff's Motion to Remand (R. Doc. 5) be **denied**.

**I.    BACKGROUND**

On November 22, 2019, Plaintiff sued Defendant in state court alleging it violated Louisiana's Wage Payment Act, La. Rev. Stat. § 23:631, by failing to pay him $19,687.37 in "wages" following his termination, despite Plaintiff's prior demands for payment. (R. Doc. 1-1 at 5); (R. Doc. 1-1 at 9-10) (April 16, 2019 letter demanding $20,187.37 — $19,687.37 in "back pay owed" and $500 in attorney's fees). In addition to unpaid wages, Plaintiff is seeking penalties and attorney's fees pursuant to La. Rev. Stat. § 23:632,[1] for Defendant's failure to comply with his

---

[1] Plaintiff's Petition, and later filings, refer to "La. R.S. 23:652" as the Louisiana statute providing "penalties for not paying wages." (R. Doc. 1-1 at 5). However, La. Rev. Stat. § 23:652 concerns the form for designating a beneficiary under an employee retirement or other benefit plan. The correct statute, which Plaintiff accurately quotes in his Petition, is La. Rev. Stat. § 23:632 (Liability of Employer for Failure to Pay; Attorney Fees; Good-Faith Exception). (R. Doc. 1-1 at 5).

demands for payment. (R. Doc. 1-1 at 5-6). Finally, Plaintiff alleges he is entitled to "recovery from Defendant for the intentional or negligent acts [it] committed . . . and injuries sustained" by Plaintiff. (R. Doc. 1-1 at 6-7). Within 30 days of service, Defendant removed the suit to federal court based on diversity jurisdiction. (R. Doc. 1).

The Notice of Removal makes clear that all parties are completely diverse[2] and suggests that the amount in controversy exceeds $75,000 because Plaintiff is seeking: (a) $19,687.37 in unpaid wages ($19,320) and withheld insurance premiums ($387.37) under La. Rev. Stat. § 23:631 (R. Doc. 1-1 at 4-5, 9-10); (b) $28,980 in estimated statutory penalties under La. Rev. Stat. § 23:632[3]; (c) attorney's fees under La. Rev. Stat. § 23:632; and (d) injuries caused by Defendant's alleged torts (R. Doc. 1 at 2-3). *See* La. Rev. Stat. § 23:631(A)(1)(a) (following employee's termination or resignation, final wages must be paid by the next regular payday or within 15 days,

---

[2] All parties agree that complete diversity exists and is not at issue here. (R. Doc. 1-1 at 3) (Plaintiff alleges he is a citizen of Louisiana); (R. Doc. 1-2) (Defendant is a citizen of both Delaware, its state of incorporation, and Texas, the location of its principal place of business.).

[3] Plaintiff describes his demand for $19,687.37 as "last wages," "back pay owed" and "unpaid wages" that he "requested be remitted." (R. Doc. 1-1 at 5, 10). This would indicate that $19,687.37 is the amount of wages Plaintiff claims was due no later than 15 days after his termination under La. Rev. Stat. § 23:631(A)(1)(a). Indeed, this is how Defendant has interpreted both Plaintiff's Petition and the April 16, 2019 letter attached to it. (R. Doc. 1 at 2-3); (R. Doc. 1-1 at 3-7, 9-10). For this reason, Defendant has estimated an additional $28,980 in penalties under La. Rev. Stat. § 23:632, in reaching the amount in controversy. (R. Doc. 1 at 3) (calculating penalty of $322 per day for 90 days, based on Plaintiff allegedly earning $3,220 for 2 weeks of work (assuming 5 workdays per week, then $3,220/10 workdays = $322 per day)); (R. Doc. 1-1 at 5-6) (Plaintiff allegedly paid $3,220 for 2 weeks of work). Plaintiff's Motion to Remand does not refute, or even mention, the additional $28,980 in penalties estimated by Defendant. (R. Doc. 5). Nonetheless, the Court notes that that the amounts calculated in both Plaintiff's Petition and his April 16, 2019 letter are difficult follow, as are the documents themselves. For example, the $19,687.37 that Plaintiff describes as "unpaid wages" includes $367.37 in insurance premiums withheld from his paycheck, plus "gross pay for 2 weeks which was calculated at $3,220 x 6 = $19,320.00." (R. Doc. 1-1 at 4-5, 9). Considering this calculation — 2 weeks at $3,220 x 6 = $19,320 — it seems unclear whether the $19,320.00 represents uncompensated work or the amount of penalties Plaintiff is claiming under La. Rev. Stat. § 23:632. But then, it does not make sense for Plaintiff to multiply 2 weeks of pay by 6 (12 weeks of pay) to calculate penalties, when the statute provides for 90 days at the employee's daily rate. *See* La. Rev. Stat. § 23:632. Nonetheless, Plaintiff had the opportunity to refute Defendant's penalty calculation, or at least clarify his own calculations, but chose not to take it. Beyond that, because Plaintiff's initial disclosures make clear that the amount in controversy is satisfied based on Plaintiff's tort claims, alone, this confusion is not determinative of the issue before the Court.

whichever comes first); La. Rev. Stat. § 23:632 (imposing penalty of up to "ninety days wages," in addition to attorney's fees, for violations of La. Rev. Stat. § 23:631).

On January 14, 2020, Plaintiff filed a Motion to Remand (R. Doc. 5), alleging the amount in controversy does not exceed $75,000, because "Plaintiff did not request a jury trial in the State Court action and his request for repayment of wages was $20,187.37." (R. Doc. 5-1 at 4). Plaintiff relies almost exclusively on the April 16, 2019 letter attached to his Petition,[4] in which he demands the following payment under La. Rev. Stat. § 23:631 (wages after termination):

> Unpaid Wages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $19,687.37
>
> Attorney Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $500.00
>
> **TOTAL DUE AS OF TODAY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $20,187.37**

(R. Doc. 1-1 at 10). Based on this letter, Plaintiff suggests "Defendant had knowledge of the amount in controversy as being $20,187.37 prior to the filing of the petition." (R. Doc. 5-1). Plaintiff, however, ignores his remaining allegations and claims for relief. But like Defendant, he does not question the existence of complete diversity between the parties.

Defendant initially opposed the Motion to Remand on February 3, 2020, primarily relying on "Plaintiff's Petition," including the factual allegations regarding his rate of pay and unpaid wages, in addition to "relevant case law." (R. Doc. 6). But it later filed a Supplemental Opposition (R. Doc. 16) after receiving Plaintiff's Initial Disclosures on February 20, 2020, in which Plaintiff provided a computation of damages well in excess of $75,000. (R. Doc. 16-1).

---

[4] A written instrument attached to a pleading as an exhibit is a part of the pleading for all purposes. La. Code Civ. P. art. 853 ("A copy of any written instrument that is an exhibit to a pleading is a part thereof."); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *see also Jennings v. Prejean*, 44 So.2d 325, 327–28 (La. 1950) ("It is elementary in the rules of pleading that where an exhibit in the form of some instrument or document is attached to a petition, the recitals or contents of the exhibit govern and control the allegation of the petition itself."). Therefore, the April 16, 2019 letter attached to the Petition as an exhibit, is a part of the Petition.

**II.    APPLICABLE LAW**

A defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). When original jurisdiction is based on diversity of citizenship, the cause of action must be between "citizens of different States" and the amount in controversy must exceed the "sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a)-(a)(1). Subject matter jurisdiction must exist at the time of removal to federal court, based on the facts and allegations contained in the complaint. *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998) ("jurisdictional facts must be judged as of the time the complaint is filed").

If removal is based on diversity jurisdiction, then "the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy." 28 U.S.C. § 1446(c)(2). But relevant here,[5] if the "State practice . . . permits the recovery of damages in excess of the amount demanded," removal is proper "if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds [$75,000]." 28 U.S.C. § 1446(c)(2)(A)(ii)-(B). The burden of proof is on the removing defendant to establish that the amount in controversy has been satisfied. *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999). The defendant can meet this burden by either (1) demonstrating that it is facially apparent that the claims are likely above $75,000, or (2) setting forth facts in controversy that support a finding of the jurisdictional minimum. *Id*. If the defendant can produce sufficient evidence that the amount in controversy exceeds the jurisdictional threshold, the plaintiff can defeat diversity jurisdiction only by showing

---

[5] Under Louisiana law, "a final judgment shall grant the relief to which the party . . . is entitled, even if the party has not demanded such relief in his pleadings." La. C. Civ. P. art. 862. Beyond that, plaintiffs in Louisiana are generally prohibited from alleging a specific amount of damages in their pleadings, but are required to state whether there is a "lack of jurisdiction of federal courts due to insufficiency of damages." La. C. Civ. P. art. 893(A)(1).

to a legal certainty that the amount in controversy does not exceed $75,000. *See Grant v. Chevron Phillips Chem. Co.*, 309 F.3d 864, 869 (5th Cir. 2002).

### III. ANALYSIS

Because the parties' filings confirm the existence of complete diversity (R. Doc. 1-1 at 3) (Plaintiff is a citizen of Louisiana), (R. Doc. 1-2) (Defendant is a citizen of both Delaware and Texas), the only issue before the Court is whether the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a).

#### A. Amount in Controversy is Not Facially Apparent

At the time of removal, Defendant suggested the amount in controversy was facially apparent, relying on "Plaintiff's Petition," including his alleged rate of pay and unpaid wages, as well as "relevant case law." (R. Doc. 6); (R. Doc. 1 at 2-3). Plaintiff's Petition can be divided into two claims — wage violations and torts — which may be aggregated for determining the amount in controversy. *See Diefenthal v. C.A.B.*, 681 F.2d 1039, 1053 n.15 (5th Cir. 1982) ("Each [plaintiff] may aggregate his tort and contract claims in order to satisfy the [] jurisdictional minimum."); *Pearson v. Nat'l Soc. of Pub. Accountants*, 200 F.2d 897, 898 (5th Cir. 1953) ("That the claims may also be aggregated to make up the jurisdictional amount in a case such as this is too clear for comment."). The Court reviews the allegations relevant to both claims below in considering whether the amount in controversy is facially apparent.

First, Plaintiff alleges Defendant violated the Louisiana Wage Payment Act (LWPA) by failing to pay his final wages following his termination (R. Doc. 1-1 at 5-6). *See* La. Rev. Stat. § 23:631(A)(1)(a) ("Upon the discharge of any . . . employee . . . it shall be the duty of the [employer] . . . to pay the amount then due under the terms of employment, . . . [by] the next regular payday or no later than fifteen days following the date of discharge, whichever occurs first."). For this,

Plaintiff seeks his past due wages, penalties and attorney's fees (R. Doc. 1-1 at 6). *See* La. Rev. Stat. § 23:632(A), (C) (relevant here, "any employer who fails . . . to comply . . . shall be liable . . . for ninety days wages").

Plaintiff does specifically claim $19,687.37 in past due under the LWPA, but he does not plead a specific amount of either penalties or attorney's fees. Defendant however estimates that $28,980 is potentially due in penalties under La. Rev. Stat. § 23:632(A), based on 90 days of pay at Plaintiff's daily rate of $322.00. (R. Doc. 1 at 3) (calculating penalty of $322 per day for 90 days, based on Plaintiff allegedly earning $3,220 for 2 weeks of work (assuming 5 workdays per week, then $3,220/10 workdays = $322 per day)); (R. Doc. 1-1 at 5-6) (Plaintiff allegedly paid $3,220 for 2 weeks of work). Significantly, Plaintiff does not challenge Defendant's penalty calculation or the underlying daily rate. *See Robinson v. BASF Corp.*, 2017 WL 5077703, at *4 (M.D. La. Oct. 13, 2017) (considering plaintiff's failure to challenge employer's estimate of penalties under the LWPA in reaching the amount in controversy).

While the figures above are based on facts alleged in the Petition, Defendant's remaining estimates of attorney's fees and compensatory tort damages are not. Under the LWPA, "[a]n award of reasonable attorney fees is mandatory in the event an employee brings a well-founded suit for unpaid wages, even if penalty wages are not due, and suits in which the recovery of back wages are granted are considered well-founded." *Chesterfield v. Genesis Hospice, L.L.C.*, 137 So.3d 22, 25 (La. App. 1 Cir. 2013). The Court therefore "must include attorney's fees" under the LWPA in determining the amount in controversy. *See Grant v. Chevron Phillips Chem. Co.*, 309 F.3d 864, 869 (5th Cir. 2002) ("court's jurisdictional-amount calculus must include attorney's fees when an applicable Louisiana statute allows the award of such fees.").

Here, based on a 25% contingency fee agreement previously used by Plaintiff's counsel in an unrelated case, Defendant estimates the potential for $17,166.84 in attorney's fees. (R. Doc. 1 at 3). This calculation includes 25% of Plaintiff's "potential recovery" under the LWPA, in addition to the $20,000 Defendant estimates below for Plaintiff's unspecified tort claims. (R. Doc. 1 at 3). There are several issues here. First, Defendant's calculation includes 25% of Plaintiff's potential recovery in tort ($5,000),[6] for which attorney's fees are not available. *J&L Family, L.L.C.*, 293 F. Supp. 3d at 624–25 ("Because Article 2315 does not expressly provide for attorney fees . . . attorney fees are not available in tort actions."). And so, Defendant's $17,166.84 estimate must be reduced to $12,166.84 at the outset.[7]

Second, just because a certain contingency fee was used by Plaintiff's counsel in one case, that does not mean it is used by counsel in all cases. Beyond that, the existence of a contingency agreement would not, by itself, necessarily indicate the potential award of attorney's fees recoverable here. This is because courts awarding reasonable fees under the LWPA consider factors consistent with Rule 1.5 of the Rules of Professional Conduct, while also relying on evidence of the attorney's actual time and costs, in assessing fees. *See Hanks v. Louisiana Companies*, 205 So.3d 1048, 1066 (La. App. 3 Cir. 2016) (considering the ultimate result; responsibility incurred,[8] importance of the litigation, amount involved, extent and character

---

[6] Defendant estimates Plaintiff may recover $20,000 or more in compensatory damages (R. Doc. 1 at 3) for Defendant's alleged "intentional or negligent acts." (R. Doc. 1-1 at 6-7). And 25% of $20,000 is $5,000.

[7] Considering the numerical facts in the Petition ($367.37 (insurance premiums) and $19,230 (unpaid wages)) and the amount of penalties estimated by Defendant ($28,980), Plaintiff's underlying LWPA recovery is estimated at $48,667.37 by Defendant. Even though the Court finds Defendant's reliance on a 25% contingency fee alone to be misplaced; in any event, Defendant should have used only the LWPA claim in its calculation of potential attorney's fees.

[8] This factor — the amount of responsibility incurred by the attorney — may include consideration of any contingency agreement between the client and counsel. *See Hutchinson v. Trussco, Inc*., 943 So. 2d 585, 591 (La. App. 3 Cir. 2006) ("Counsel assumed responsibility of the case on a contingency basis."). Otherwise, a court may take into account any contingency fee agreement, in addition to the Rule 1.5 factors. *See Voitier v. Church Point Wholesale Beverage Co*.,

attorney's work, attorney's legal knowledge, diligence and skill, court appearances, and court's own knowledge.); *Molina v. Oilfield Production Contractors, Inc.*, 241 So.3d 337, 342 (La. App. 1 Cir. 2017) (considering only Rule 1.5 factors where record did not contain evidence of actual time and costs of attorney's services in litigating LWPA case). None of those factors are discussed by Defendant.

But despite the flaws in Defendant's estimate, the Court does note that fee awards under the LWPA "can be significant," and 25% of Plaintiff's underlying LWPA claim — $12,166.84 (.25 x $48,667.37) — is plausible. *Robinson*, 2017 WL 5077703, at *4; *see also Chesterfield v. Genesis Hospice, L.L.C.*, 137 So.3d 22, 25 (La. App. 1 Cir. 2013) (awarding $5,000 in attorney's fees where plaintiff was awarded $4,300 in unpaid wages, vacation leave, and mileage reimbursement, but not penalties); *Webb v. Roofing Analytics, LLC*, 121 So.3d 756, 758, 768 (La. App. 2 Cir. 2013) (trial court awarded $31,250 in attorney's fees where plaintiff was entitled to $16,175.25 in unpaid commissions and $9,726.30 in penalties); *Jeansonne v. Schmolke*, 40 So. 3d 347, 360, 362 (La App. 4 Cir. 2010) (trial court awarded $22,888.09 in attorney's fees where unpaid commissions totaled $24,133.66 and $20,885.40 was owed in penalties). Therefore, if the Court accepted Defendant's calculations, which Plaintiff does not challenge, Plaintiff's LWPA claim is potentially worth $60,834.21.

Aside from his LWPA claim, Plaintiff claims damages for injuries caused by Defendant's "intentional or negligent acts" without providing any detail about the underlying conduct or the injuries sustained. (R. Doc. 1-1 at 6-7). Although it acknowledges that Plaintiff "seeks damages for injuries without specifying exactly what injuries he has sustained," Defendant assumes those

---

760 So. 2d 451, 461 (La. App. 3 Cir. 2000) (noting "the percentage fixed for attorney fees in plaintiff's contract with his attorney, if based on a contingency," can be considered in addition to the Rule 1.5 factors).

injuries may include "mental anguish, emotional distress, anxiety, humiliation and embarrassment." (R. Doc. 1 at 3). And based on awards in other employment cases, Defendant estimates Plaintiff's tort claims may be worth at least $20,000. (R. Doc. 1 at 3). But this estimate is too speculative. Plaintiff's Petition only states that Defendant is liable for injuries caused by its "intentional or negligent acts." (R. Doc. 1-1 at 6-7). Considering this Court has found that "pleading general categories of damages, such as pain and suffering," does not provide a defendant with sufficient information to show the amount in controversy is facially apparent, the allegations here certainly aren't enough for Defendant to make any estimation of Plaintiff's tort claims in meeting its burden of proof. *Plyant v. Sedgwick Claims Management Services, Inc*, 2017 WL 3446536, at *3 (M.D. La. June 29, 2017) (collecting cases).

And so, even again accepting Defendant's calculations regarding the LWPA claim, the amount established is only $60,834.21. While Plaintiff also seeks to recover for injuries allegedly caused by Defendant's tortious conduct, "the absence of any facts indicating the actual injuries suffered . . . makes it impossible to surmise" how much those additional damages might be worth from the face of the Petition. *Plyant*, 2017 WL 3446536, at *4. Therefore, the Court concludes the amount in controversy is not facially apparent and will turn to whether the additional evidence provided in Defendant's Supplemental Opposition is sufficient to meet its burden.

### B.    Defendant Has Met Its Burden Through Summary Judgment-Type Evidence

Rule 26(a)(1)(A)(iii) of the Federal Rules of Civil Procedure requires that initial disclosures include a "computation of each category of damages claimed by the disclosing party." In its Supplemental Opposition, Defendant provides the Initial Disclosures it received from Plaintiff on February 20, 2020, containing his computation of the "compensatory damages" he claims as a result of Defendant's alleged torts (R. Doc. 16-1). Specifically, Plaintiff points to

several cases awarding employees between $100,000 and $350,000 for emotional distress resulting from the "type of" conduct allegedly engaged in by Defendant (R. Doc. 16-1 at 2-3). *See Wainwright v. Fontenot*, 774 So. 2d 70, 74 (La. 2000) ("The most common type of damages in the [tort] context are compensatory damages . . . ."); *Mosbey v. Jefferson Par. Sheriff's Office*, 250 So. 3d 1110, 1118 (La. App. 5 Cir. 2018) ("Compensatory damages are divided into special damages and general damages."); *Romano v. Jefferson Par. Sheriff's Office*, 138 So. 3d 688, 693 (La. App. 5 Cir. 2014) ("General damages are inherently speculative in nature and cannot be fixed with any mathematical certainty. These include pain and suffering.").

"Any evidence submitted after the complaint has been filed is allowable only if relevant to the time of removal." *Nelson v. Nationwide Mutual Ins. Co.*, 192 F. Supp. 2d 617, 620 (5th Cir. 2001) (relying on plaintiff's post-removal answers to interrogatories to find the amount in controversy was satisfied). In assessing the amount in controversy, courts in the Fifth Circuit have consistently relied on a plaintiff's initial disclosures or discovery responses that further clarify the injuries or damages alleged in the complaint. *Marcel v. Pool Co.*, 5 F.3d 81, 82, 84 (5th Cir. 1993) (relying on plaintiff's post-removal answers to interrogatories which clarified the amount of special damages being alleged in the complaint); *Plyant v. Sedgwick Claims Management Services*, 2017 WL 3446536, at *5-6 (M.D. La. June 29, 2017) (relying on plaintiff's interrogatory responses and medical records provided after removal to find the amount in controversy was met at time of removal); *Henderson v. J.C. Penny Corp. Inc.*, 2013 WL 4039407, at *6 (M.D. La. Aug. 7, 2013) (relying on medical records provided after removal).

Here, the computation of damages in Plaintiff's Initial Disclosures is "helpful in clarifying an ambiguous petition" and is therefore "relevant to the amount in controversy at the time of removal." *Nelson*, 192 F. Supp. 2d at 620. Plaintiff's Initial Disclosures are sufficient, independent

evidence of Defendant's calculation of the potential damages recoverable under the LWPA, to find the amount in controversy exceeded $75,000 at the time of removal. *See Henderson*, 2013 WL 4039407, at *5 (additional evidence submitted in defendant's supplemental opposition to remand, was independently sufficient to meet its burden). Any doubts as to the amount in controversy dissipate when considering Defendant's unrefuted calculation of potential LWPA damages (R. Doc. 1 at 2-3) ($60,834.21), in combination with Plaintiff's Initial Disclosures (R. Doc. 16-1 at 2-3) (estimating compensatory damages between $100,000 and $350,000 for emotional distress).

## IV.  CONCLUSION

For the reasons discussed above, the Court finds Defendant has met its burden of establishing the amount in controversy exceeded $75,000 at the time of removal. Therefore, the Court **RECOMMENDS** that Plaintiff's Motion to Remand (R. Doc. 5) be **DENIED**.

Signed in Baton Rouge, Louisiana, on September 15, 2020.

**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**